IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD IBANEZ, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 09-1406 |
| v. | : | |
| ABBOTT LABORATORIES, INC., | : | |
| Defendant. | : | |

**JONES, II, U.S.D.J.**                                                                              **NOVEMBER 14, 2011**

## MEMORANDUM

This is a matter brought under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et seq. (2011), and the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 Pa. Cons. Stat. §§ 333.101-333.115 (2006). Gerald Ibanez (hereinafter "Plaintiff"), a former pharmaceutical representative for Abbott Laboratories, Inc. (hereinafter "Defendant") claims Defendant did not pay him overtime because it mis-classified its representatives as exempt from overtime requirements. Before the Court are Plaintiff's Motion for Summary Judgment (Docket No. 44); Defendant's Motion for Summary Judgment (Docket No. 54); responses and replies thereto; and multiple Notices of Supplemental Authority. The Court held oral argument on July 26, 2011. See Tr. at Docket No. 84. For the reasons set forth herein, the Court will grant the Defendant's Motion and deny the Plaintiff's motion.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a summary judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).  In order to defeat a motion for summary judgment, disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  An issue is genuine if the fact finder could reasonably return a verdict in favor of the non-moving party with respect to that issue. Anderson, 477 U.S. at 248.  In reviewing a motion for summary judgment, the court "does not resolve factual disputes or make credibility determinations, and must view facts and inferences in the light most favorable to the party opposing the motion." Seigel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995).

  Plaintiff contends that: (1) Defendant is precluded from arguing that Plaintiff is exempt because a Court outside this Circuit has ruled similar plaintiffs are not, and (2) even if Plaintiff is not entitled to judgment based on collateral estoppel, Plaintiff does not fall within the administrative exemption to the FLSA and PWSA.  Defendant maintains it is entitled to judgment as a matter of law because: (1) it is not appropriate to apply collateral estoppel, and (2) under Third Circuit precedent, Plaintiff is subject to the administrative exemption and therefore cannot prevail in this action.

  FLSA Regulations define an "employee employed in a bona fide administrative capacity" as any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week…exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a) (2010). Pennsylvania's administrative exemption substantially mirrors the FLSA's requirements. Under Pennsylvania law, an exempt administrative employee (1) is "compensated on a salary or fee basis at a rate of not less than $250 per week," (2) has a "primary duty" that "consists of the performance of office or non-manual work directly related to management policies or general operation of his employer or the customers of the employer," and (3) has a primary duty that "includes work requiring the exercise of discretion and independent judgment." 34 Pa. Code § 231.83(1), (5) (2011).

The U.S. Court of Appeals for the Third Circuit has twice within the last two years found pharmaceutical sales representatives exempt under the administrative exception. Smith v. Johnson & Johnson, 593 F.3d 280 (3d Cir. 2010); Baum v. AstraZeneca, C.A.3 No. 09-2150, 2010 WL 1063935 (3d Cir. Mar. 24, 2010). The Smith Court found a representative was engaged in work directly related to the management or general business operations of the employer because the "position required her to form a strategic plan designed to maximize sales" and said plan required a "high level of planning and foresight." Smith, 593 F.3d at 285. Soon thereafter, the Baum Court relied on Smith and found a representative's work related to the general business operations of her employer because she "advertis[ed] and market[ed]"

pharmaceutical products.  Baum, 2010 WL 1063935 at *3.[1]

These well-reasoned decisions found persuasive authority in caselaw from this and other circuits, as well as the Code of Federal Regulations.  Subsequently, a district court within the Third Circuit likewise granted summary judgment to a pharmaceutical company under the FLSA's administrative exemption.  Jackson v. Alpharma, Inc., No. 07-3250, 2010 WL 2869530 (D.N.J. July 19, 2010).  In Jackson, Judge Brown likened the scenario to that in Smith, in that the plaintiffs: (1) were "involved in planning long- or short-term business objectives related to the marketing of their products within their territories," and (2) exercised discretion and independent judgment with respect to matters of significance because they "decide[d] how best to contact [ ] doctors and move their business."  Id. at *1,*4.  See also Cote v. Burroughs

---

[1] The Baum Court cogently summarized the similarities between the Smith and Baum plaintiffs:

> Baum's duties were very similar to the plaintiff's duties in *Smith v. Johnson & Johnson*, where we held that a pharmaceutical sales representative fell under the administrative employee exemption of the FLSA.  In *Smith*, the plaintiff, Patty Lee Smith, was tasked with visiting an average of ten physicians per day to extol the benefits of Johnson & Johnson's pharmaceuticals. Baum had a similar workload.  She visited eight or nine physicians per day. Smith, in an effort to cultivate relationships with physicians, would bring food and coffee to physicians' offices. Baum similarly organized access meals.  On physician visits, Smith worked off of a prepared 'message' provided by her employer, just like Baum.  Numerous other similarities exist.  For example, both individuals could use only certain approved visual aids in their presentations to physicians, both were trained on how to conduct a physician visit by their employer, and both prepared post-call notes after physician visits.  Thus, our conclusion that Baum exercised discretion and independent judgment in her day-to-day activities is further supported by the numerous similarities between Baum and Smith's roles.

Baum, 2010 WL 1063935, at *3 (internal citations omitted).

Wellcome Co., 558 F. Supp. 883, 887 (E.D. Pa. 1982) (holding that pharmaceutical detail person was exempt under the FLSA).

After carefully reviewing the record in this matter, I conclude that the undisputed facts – which include Plaintiff's own testimony – are directly analogous to those in Smith, Baum, and Jackson. Specifically, Plaintiff engaged in short- and long-term business planning, including (but not limited to):

- "[U]tiliz[ing] available resources to plan and implement strategies to drive business in [his] territory, including frequent analysis of reports from the home office and the creation of a focused specific business plan." Ibanez Dep. 179:7-16.

- "[D]evelop[ing] solid plans to allocate and direct resources to keep physicians and drive business." Id. at 181:6-9.

- "[W]ork[ing] effectively with Abbott and B.I. counterparts to plan and implement strategies and programs that dr[o]ve business forward." Id. at 181:10-15.

- "[D]evelop[ing] and utiliz[ing] key opinion leaders." Id. at 182:1-4.

- "[A]nalyz[ing] prescription and ROI data to ensure resources [a]re directed appropriately." Id. at 182:24-183:2.

- "[D]evelop[ing] focus plans to direct resources to physicians that would bring the highest ROI." Id. at 183:3-6.

- "[D]eveloping] daily call plans based on the cornerstone selling mode, EBS and words that matter that contained objectives and actionable items for each call that were tailored to each physician's individual level of product awareness." Id. at 179:17-23; see also Marchetta Decl. ¶¶ 5-6.

- Developing "a game plan or strategy for individual calls with physicians." Id. at 68:21-23.

- Participated in the creation of business plans which tracked doctors by market share and potential. Id. at 182:21-23; 88:9-10; 89:22-24; 250:4-12; 250:25-251:2; see also Marchetta Decl. ¶ 6; Naparstek Decl. ¶ 6.

- Participating in selection of speakers and attendees for peer-to-peer educational events (e.g., access meals and speaker events), including identifying physicians in his territory who could be trained as effective speakers on Abbott's products. Id. at 139:20-140:12; 245:16-246:15; 248:12-20; 250:13-251:2; see also Marchetta Decl. ¶ 6; Naparstek Decl. ¶ 6.

- Deciding how much time to spend with physicians, how to engage physicians in dialogue, and whether to use any sales aids or studies to facilitate that dialogue.[2] Id. at 186:5-14; 65:7-21; 66:5-7; 209:18-23; 121:22-122:4; 211:24-212:5; see also Marchetta Decl. ¶ 4; Naparstek Decl. ¶ 7.

- Receiving substantial cash bonuses for increasing prescriptions written in his assigned territory. See Ibanez Ex. 49 at ABTIBA0025147-48.

These activities parallel those in Smith and Baum in that they reflect the representatives' ability to develop strategies; to approach, communicate, and cultivate relationships with physicians; and to operate without constant supervision in the field. See, e.g., Smith, 593 F.3d at 282; Baum, 2010 WL 1063935 at *2. These activities also are consistent with relevant definitions of exempt administrative work because they affect Defendant's business operations to a substantial degree, see 69 Fed. Reg. 22,122, 22,138 (Apr. 23, 2004)(codified at 29 C.F.R. pt. 541 (2011)), and involve sales and promotional work on behalf of Defendant that reflect the exercise of discretion and independent judgment with respect to matters of significance, see 29 C.F.R. § 541.200(a)(3) (2010).[3]

Notably, Plaintiff takes little issue with these facts aside from minor passing

---

[2] In this regard, Plaintiff characterized part of his activities as "relationship building" which required choice and application of unique techniques for each physician. Ibanez Dep. 187:20-188:1.

[3] I agree with the District Court in Baum, which noted that "[n]o one can honestly say that a salesperson is effective simply by spitting out a memorized script; no one can imagine a company that would require rote adherence to planned words in any situation." Baum, 605 F. Supp. 2d 669, 685 (W.D. Pa. 2009). This is especially true in the context of marketing prescription drugs to physicians with unique practices.

attempts to paint them in a slightly different light.  Rather, Plaintiff goes to extraordinary lengths to argue that the Third Circuit's legal conclusions are wrong.  See Pl's Br. at 19-31.  Relying primarily on caselaw that is either outdated or from other circuits,[4] as well as Department of Labor *amicus curiae* briefs in other cases, Plaintiff asks this Court to – on fundamentally similar facts – re-evaluate the very questions decided by the Third Circuit in Smith and Baum and reach a different result.[5]  I am, however, bound by the law of this Circuit (with which I agree).[6]

---

[4] Plaintiff cites Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 903 (3d Cir. 1991).  However, the Smith Court held Martin was inapplicable because the current regulations on the administrative exemption differ significantly from the regulation in place at the time Martin was decided.  Smith, 593 F.3d at 286.  Plaintiff's reliance on Reisick v. Univ. Comm. of Miami, Inc., 591 F.3d 101 (2d Cir. 2010), Kuzinski v. Schering Corp., No. 3:07-CV-233, 2011 WL 3438403 (D. Conn. Aug. 5, 2011), and Gorey v. Manheim Servs. Corp, 788 F.Supp.2d 200 (S.D.N.Y. 2011), is misplaced, because those decisions (1) rely on Martin, (2) add nothing to the Third Circuit's analysis in Smith, and (3) are not binding authority.  See Nittoli v. Morris County Bd. of Chosen Freeholders, Civ. A. No. 05-4007, 2007 WL 1521490, at * 7 n.23 (D.N.J. May 22, 2007) (explaining that "decisions from the ... Second Circuit are not binding authority").  Gorey does not even involve the pharmaceutical industry.  Plaintiff's reliance on In re Novartis Wage and Hour Litigation, 611 F.3d 141 (2d Cir. 2010), is misplaced because that Court deferred to the Department of Labor, which, as discussed *infra*, is inappropriate here.  The decision in Palacious v. Boehringer Ingelheim Pharmaceuticals, Inc., No. 10-22398-Civ-UU, 2011 WL 2837464 (S.D. Fla. July 12, 2011), is unpersuasive because it relies on In re Novartis.

[5] Indeed, on multiple occasions Plaintiff acknowledges a basic disagreement with the Third Circuit's prior analyses, even going so far as to state the belief that any conclusion other than that proposed by Plaintiff, and previously rejected by the Third Circuit, "defies common sense, and the law."  Pl's Br. at 32.  See also Pl's Resp. Br. at 4-9 (entire section entitled "The Smith Decision Was Flawed"); id. at 9-10 (noting that "in addition, as in Smith, the [Baum] decision is flawed in several respects," and describing that decision as "inexplicabl[e]").

[6] It is true that the Smith Court noted: "Consequently, we recognize that based on different facts, courts, including this Court, considering similar issues involving sales representatives for other pharmaceutical companies, or perhaps even for [Johnson & Johnson], might reach a different result than that we reach here."  Smith, 593 F.3d at 283 n.1.  This is largely a statement of the obvious – namely, that a different factual scenario in a fact-sensitive legal analysis might lead to a different conclusion.  More importantly, however, is the fact that while Plaintiff essentially trumpets this language as a "get out of jail free card," *Plaintiff fails to provide a factual scenario that significantly differs from that in Smith, Baum, or Jackson*.

Plaintiff contends that, pursuant to Auer v. Robbins, 519 U.S. 453 (1997), this Court should – despite Smith and Baum – defer to the positions set forth in *amicus curiae* briefs filed by Department of Labor in In re Novartis and Christopher v. SmithKline Beecham Corp., 635 F.3d 383 (9th Cir. 2011). As an initial matter, the Department of Labor did not brief any PMWA issues, and thus the *amicus curiae* briefs could not control the disposition of those claims. More importantly, however, the Smith, Baum, and Jackson plaintiffs made the same request, and none of those Courts agreed. See Jackson, 2010 WL 2869530 at *5 ("In light of the Third Circuit's clear opinion in Smith, and subsequent non-precedential opinion in Baum v. AstraZeneca, LP [citation omitted], the Court does not find it necessary to address these other cases."); see also Long Island Care at Home Ltd. v. Coke, 551 U.S. 158, 170 (2008) (noting that *amicus curiae* briefs that do not comply with notice-and-comment rule-making procedures can receive deference only "as long as interpretative changes create no unfair surprise"); Christopher, 635 F.3d at 400 (concluding that, pursuant to Gonzales v. Oregon, 546 U.S. 243 (2006), the Court could not defer to an agency interpretation when the agency had elected merely to paraphrase statutory language).[7] Accordingly, I will not defer to the cited Department of Labor

---

Indeed, following reference to the Smith footnote, Plaintiff's entire effort to illustrate the difference between the facts of this case and the facts in Smith consists of three sentences, two of which are conclusory observations, and the last of which borders upon cavil by stating that "none of the evidence the Third Circuit found compelling in Smith is present in this action." See Pl's Resp. Br. at 4. Plaintiff protests too much. While the Smith footnote may be of use to Plaintiff in a case with a fundamentally different set of facts, it is of no use where the facts are substantially analogous.

[7] I note that I have conducted my own review of the relevant *amicus curiae* briefs and law, and – even if I were not bound by the Third Circuit's disregard of those briefs – I would reach the same conclusion as to their value here. Harris v. Auxilium Pharmaceuticals, Inc., No. 4:07-CV-3938, 2010 WL 3817150 (S.D. Tex. Sept. 28, 2010), is not binding authority and I do not find it persuasive.

*amicus curiae* briefs.

Plaintiff also contends that this Court may not rule in Defendant's favor due to application of the doctrine of "offensive collateral estoppel."[8] Plaintiff explains that "Defendant vigorously litigated the applicability of the outside sales exemption and the administrative exemption to its pharmaceutical sales representatives employed nationwide in the case of Jirak v. Abbott Laboratories, Inc., 716 F. Supp. 2d 740 (N.D. Ill. 2010)," and that "[r]elying in great part on an *amicus curiae* brief submitted by the DOL in an appeal in In re Novartis [ ], the Jirak Court granted the plaintiffs motion for summary judgment and denied Defendant's ... [holding] that Abbott's pharmaceutical representative did not meet the requirements of either the outside sales or administrative exemptions and were entitled to overtime pay." Pl's Br. at 5 (citations omitted). Plaintiff posits that, as a result, "the Court in Jirak resolved the issue of the exempt status of Abbott's pharmaceutical representatives by final judgment, conclusively resolving it under the doctrine of collateral estoppel, as the Jirak case involves the same issues and the same

---

[8] The prerequisites for the application of collateral estoppel are: (1) the issue sought to be precluded must be the same as the issue in the prior action; (2) the issue must have actually been litigated in the prior action; (3) it must have been determined by a final and valid judgment; and (4) the determination must have been essential to the prior judgment. Burlington N. R.R. Co. v. Hyundai Merchant Marine Co., Ltd., 63 F.3d 1227, 1231-32 (3d Cir. 1995) (citing In re Graham, 973 F.2d 1089, 1097 (3d Cir. 1992)). In addition, when a plaintiff is using collateral estoppel offensively, courts must also make a finding of fairness. See Raytech Corp. v. White, 54 F.3d 187, 195 (3d Cir. 1995) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979)). The U.S. Supreme Court has identified two reasons that weigh against the application of offensive collateral estoppel: (1) its availability could create an incentive for potential plaintiffs "to adopt a 'wait and see' attitude"; and (2) general fairness considerations. General fairness considerations include: (1) if the defendant was initially sued for "small or nominal damages" and "if future suits [were] not foreseeable"; (3) if the "judgment relied upon for a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant"; (4) if "the second action affords the defendant procedural opportunities [e.g., discovery procedures] unavailable in the first action that could readily cause a different result." See Burlington N. R.R. Co., 63 F.3d at 1232 n.7.

Defendant."  Id.

Trial courts have "broad discretion to determine when to apply non-mutual offensive collateral estoppel."  Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006).  "[O]ffensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does. . . .  Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment."  Parklane Hosiery, 439 U.S. at 329-30; Jean Alexander Cosmetics, 458 F.3d at 249 (stating same); see also Univac Dental Co. v. Dentsply Int'l, Inc., 702 F. Supp. 2d 465, 470 (M.D. Pa. 2010) (highlighting the concern of the Jean Alexander Cosmetics Court that "applying ... non-mutual offensive collateral estoppel too freely would create a general incentive for plaintiffs to 'wait and see' if another plaintiff obtains a favorable judgment in an earlier action, rather than promptly asserting their own claims). Accordingly, "in cases where a plaintiff could easily have joined in the earlier action ... a trial judge should not allow the use of offensive collateral estoppel."  Id. at 331; see also, e.g., Penneco Pipeline Corp. v. Dominion Transmission, Inc., Nos. 05-49, 05-537, 2007 WL 1847391 (W.D. Pa. June 25, 2007) (observing same and noting that "offensive use of [collateral estoppel] does not promote judicial efficiency in the same manner as collateral estoppel asserted in a defensive posture"); Bradburn Parent Teacher Store, Inc. v. 3M, No. Civ. A. 02-7676, 2005 WL 736629 (E.D. Pa. March 30, 2005) (citing Hauser v. Krupp Steel Producers, Inc., 761 F.2d 204, 207 (5th Cir. 1985), and noting that "[c]ourts have denied the use of offensive collateral estoppel where a plaintiff who could have joined the earlier action failed to present a valid reason for not

joining it")..  To do so can be especially unfair in the context of a class action.  Indeed, the Seventh Circuit has established a bright-line rule that plaintiffs who choose not to participate in a class action "may not claim the benefits of the class's victory" for purposes of non-mutual collateral estoppel in later actions."  Premier Elec. Const. Co. v. Nat'l Elec. Contractors Ass'n, Inc., 814 F.2d 358, 365-67 (7th Cir. 1987); accord Polk v. Montgomery County, 782 F.2d 1196, 1202 (4th Cir. 1986).[9]

Applying these principles, I find that allowing Plaintiff to use offensive collateral estoppel here would be inequitable and unfair.  Plaintiffs' counsel in Jirak also represents Plaintiff here.  In connection with the Jirak action, counsel sent notice to thousands of Abbott representatives, including Plaintiff; the notice instructed Plaintiff on what to do to litigate his FLSA claims.[10]  However, Plaintiff decided not to join the Jirak action, and instead chose to litigate his claims, with the aid of the Jirak plaintiffs' counsel, as a class action in Pennsylvania.[11]  In so doing, Plaintiff set up precisely the type of structure that caselaw counsels against – namely,

---

[9] Moreover, the Eleventh Circuit has noted that the FLSA's opt-in procedure was deliberately designed to "prohibit ... a representative plaintiff filing an action that potentially may generate liability in favor of uninvolved class members."  Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F. 3d 1240, 1248 (11th Cir. 2003).

[10] The address for Plaintiff on the Jirak notice list is the same address that Plaintiff admitted at deposition has been his home for many years.  Plaintiff further admitted that he was "contacted by mail" about "another case," the name of which he could not remember, and so he contacted counsel (who happened to be the same counsel as in the Jirak matter).  Plaintiff's present contention that he was unaware of the Jirak action is unconvincing at best.  Indeed, Plaintiff fatally undercuts that position when he states that he and his counsel "had strategic reasons for filing a second lawsuit."  Pl's Br. at 12.

[11] Plaintiff's counsel also utilized the same strategy with other plaintiff class members in New York and Connecticut.  See Solimine v. Abbott Labs., Inc., No. 1:09-cv-3107 (S.D.N.Y. Feb. 23, 2009); Jarrell v. Abbott Labs., Inc., No. UWY-CV-09-4018799-S (Conn. Super. Ct. filed Feb. 23, 2009).

one in which Plaintiff would not be bound by an adverse decision in Jirak, but could claim the benefit of a favorable one.[12]  I find this strategy and potential result inconsistent with Parklane Hosiery, Hoffman-LaRoche, Jean Alexander Cosmetics, and their progeny.  See, e.g., Eason v. Linden Avionics, Inc., 706 F. Supp. 311, 318-19 (D.N.J. 1989) ("The same law firm represents both plaintiff Ramsay in [one] [a]ction and plaintiff Eason in [another] action.... The tactical advantage of bringing separate actions is obvious. The plaintiffs' attorneys can experiment with one strategy [ ], and if unsuccessful, devise a different approach for the [other] action.  The doctrine of issue preclusion, however, was not intended to be used in this way.  Such maneuvering, rather than promoting judicial economy, encourages excessive and superfluous litigation.").

       Furthermore, Plaintiff's collateral estoppel argument must also fail because:  (1) the Jirak Court's grant of summary judgment on the FLSA claims was based on its decision to grant deference to the Department of Labor's *amicus curiae* brief in In re Novartis, which, as discussed supra, is at direct odds with the Third Circuit's choice to not grant deference to the Department's position, Jirak, 716 F. Supp. 2d at 746-47, and (2) the Jirak Court did not rule on Plaintiff's PMWA claims.  It would be a misuse of this Court's powers to apply an equitable doctrine to generate a result that favors a foreign District Court's limited and fact-specific rulings over binding Third Circuit precedent that is appropriately applied to these analogous facts.  Accordingly, I conclude that Jirak has no preclusive effect in this matter.

---

[12] It is telling that Plaintiff amended this action to add FLSA claims and assert estoppel *after* the Jirak decision.

In the end, after careful consideration, I agree with Defendant that Plaintiff regularly exercised discretion and independent judgment in all aspects of his job, including pre-call planning, interactions with physicians, territory business planning, and the planning of events. In accord with binding authority, I therefore conclude Plaintiff is an exempt administrative employee under the FLSA and PMWA.[13]  Defendant has established facts that entitle it to summary judgment. Plaintiff has not done so. An appropriate Order follows.

---

[13] Because this conclusion is outcome-determinative, I need not address the applicability of the outside salesman exemption.